IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

JARREAU A. AYERS,              )
                               )
        Plaintiff,             )
                               )
    v.                         )   C.A. No. 19-1738 (JLH)
                               )
MARC RICHMAN,                  )
                               )
        Defendant.             )

**MEMORANDUM OPINION**

Jarreau A. Ayers, SCI Camp Hill, Camp Hill, Pennsylvania, Pro Se Plaintiff.

Robert Michael Kleiner, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendant.

April 4, 2024
Wilmington, Delaware

HALL, U.S. District Judge:

I. **INTRODUCTION**

Plaintiff Jarreau A. Ayers ("Plaintiff") is an inmate who was formerly confined at the James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, and the Sussex Correctional Institution ("SCI") in Sussex, Delaware, but is now housed at a Pennsylvania prison. He filed this action on January 17, 2019, pursuant to 42 U.S.C. § 1983. (See D.I. 1, 2, 3.)[1] Plaintiff appears *pro se* and proceeds *in forma pauperis*. The Amended Complaint is the active pleading. (D.I. 6.) The only remaining Defendant is Dr. Marc Richman, Ph.D., Bureau Chief of the Bureau of Healthcare, Substance Abuse, and Mental Health Services ("BHSAMHS") for the Delaware Department of Correction ("DDOC").

Before the Court are Dr. Richman's motion for summary judgment (D.I. 102) and Plaintiff's motion for leave to file a second amended complaint adding two defendants—Dr. Vincent Carr, M.D., and Dr. Christopher Moen, M.D. (D.I. 106.)[2] The motions are fully briefed. This case was recently re-assigned to me, and I now resolve the pending motions as follows.

---

[1] Plaintiff was one of several inmates who filed a consolidated Complaint in *Staats v. Phelps*, Civ. No. 19-101-LPS. (D.I. 3.) Upon screening, the Court dismissed the Complaint as frivolous and for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(i), (ii) and 1915A(b)(1) and severed the case into five individual cases, one of which was opened on behalf of Plaintiff. (*See* D.I. 1, 2.) Plaintiff was given leave to file an amended complaint, and he did so. (D.I. 6.)

[2] Plaintiff has also filed a motion for leave to file a sur-reply (D.I. 122), which will be granted, and Richman has filed a motion to strike Plaintiff's sur-reply (D.I. 119), which will be denied.

## II. BACKGROUND

### A. Factual Background

The Court reviews the evidence of record in the light most favorable to Plaintiff. On October 11, 2016, Plaintiff, then incarcerated at JTVCC, was seen in the medical unit after injuring his knee while jogging. (D.I. 105 at 61.) An x-ray and MRI were promptly ordered and performed. On November 17, 2016, a consult request form for an orthopedic consultation was completed by a nurse practitioner, noting that an offsite consultant had reviewed Plaintiff's x-ray and MRI and concluded that Plaintiff had torn his ACL. (*Id.* at 9–11.) On December 21, 2016, Plaintiff was seen at Bayhealth Ortho and it was recommended that he follow up with Dr. Crawford for "likely surgery" related to a torn ACL and medial/lateral meniscus tears. (*Id.* at 12, 58–59.) An appointment was scheduled for early February 2017, but it was rescheduled to late March 2017 because of an emergency lockdown of JTVCC following a prisoner uprising, in which Plaintiff participated. (*Id.* at 57.)[3] A March 30, 2017 note in Plaintiff's medical file indicated that he had a pre-op visit scheduled for April, that lab work had been ordered for pre-op testing, and that, in May, Plaintiff would undergo a "knee arthroscopy with ACL reconstruction with allograft, partial medial/lateral meniscectomies." (*Id.* at 55.) The pre-op appointment was scheduled for April 25, 2017, but apparently occurred on May 2, 2017. (*Id.* at 53–54.)

The surgery was scheduled for May 31, 2017. (*Id.* at 19, 51–52.) On May 16, 2017, however, Plaintiff's medical records reflect that "Sx [surgery] cancelled, inmate aware of sx date.. [sic] no plans at this time to reschedule. Awaiting directive from CMO [Chief Medical

---

[3] Plaintiff was later convicted of charges stemming from his role in the riot. *Ayers v. State*, 251 A.3d 637, 638 (Del. 2021).

2

Officer, Dr. Christopher Moen]." (*Id.* at 4, 52.) Plaintiff says that he became aware of the date when a doctor mistakenly said it in front of him. (D.I. 112 at 2.)

On May 19, 2017, Plaintiff submitted a sick call slip, asking "to know what happened to his surgery for his ACL." (D.I. 105 at 51.) On June 27, 2017, a note in Plaintiff's medical record reflects that the "request for surgery is still pending for approval." (*Id.* at 50.) Plaintiff continued submitting sick calls slips reporting his knee pain and requesting information on his appointment for surgery. (*Id.* at 48–49.) On August 15, 2017, Plaintiff was told that consult coordinators were aware and handling the scheduling. (*Id.* at 48.)

On September 18, 2017, after Plaintiff submitted another sick call slip reporting that his knee was in constant pain, requesting information on the scheduling of the surgery, and noting that he "thought everything was approved for [him] to have surgery," a nurse practitioner documented in a medical note that Plaintiff was "[w]earing knee brace but actually needs the surgery," and that she would "speak with ... CMO [Dr. Moen] regarding case." (*Id.* at 45–46.)

On September 27, 2017, there is a note in Plaintiff's medical record stating "[s]cheduled for ortho appointment mid October per request of provider." (*Id.* at 45.) On October 17, Plaintiff was transferred from JTVCC to Sussex Correctional Institution ("SCI"). The mid-October 2017 orthopedist appointment did not occur.

On October 31, 2017, Plaintiff filed a medical grievance ("Grievance 383100"), stating:

> I was scheduled for knee surgery in May 2017 but it was postponed for whatever reason. I was told during a medical grievance hearing that I was supposed to go see the outside doctor in Oct but instead I was shipped from Smyrna to SCI. I have had a torn ACL, MCL & cartilage damage for a year now & the pain & difficulty of walking is getting worse.

(*Id.* at 309.)

3

The Delaware Department of Correction three-step procedure for medical grievances is as follows. In Step One, the Institutional Grievance Chair (ICG) contacts healthcare staff, who attempt to resolve the grievance. In Step Two, if the inmate is not satisfied, the Medical Grievance Committee ("MGC") holds a hearing with the inmate and at least three members of the health service staff present. In Step Three, if the inmate is not satisfied with the MGC's decision, the Bureau Grievance Officer ("BGO") reviews the grievance and submits a recommendation to the Bureau Chief of the BHSAMHS for review and a final decision. (*Id.* at 359–63.)

A November 15, 2017 note in Plaintiff's medical records states that Plaintiff reported that his "knee gives out every few days," that he had been scheduled for ACL surgery approximately a year earlier, the surgery was "never performed because further charges were added to his sentence and he was transferred here for pretrial," and that a "consult for follow-up with orthopedics was requested." (*Id.* at 43.) The record contains an orthopedic consult request from the same day, which was completed by a nurse practitioner. (*Id.* at 17.)

On November 16, 2017, Grievance 383100 was denied by the ICG, who stated:

> Patient wants to be taken to have his ACL repaired. Per the consult coordinator, the Patients' [sic] original consult was denied; therefore, his surgery will not be scheduled. It is being reported that surgery is not required and that the providers are developing a treatment plan for on site.

(*Id.* at 301.) On December 4, 2017, the MGC denied Plaintiff's appeal of Grievance 383100. (*Id.* at 304.)

On December 6, 2017, a nurse practitioner noted in Plaintiff's record that Plaintiff was "again request[ing] surgery (as it had been scheduled)." (*Id.* at 42.) The note continued, "Consult sent out to Dr Moen and it was refused, citing it does not threaten danger to life or limb.

4

He states PT would be appropriate at this time." (*Id.*) The same day, the BGO recommended that the Bureau Chief deny Plaintiff's appeal of Grievance 383100. The BGO stated:

> The decision was made that the offender's security classification out weighed the need for surgery and an alternative treatment plan has been in place. Grievant is directed to discuss his concerns with the treating providers.

(*Id.* at 306.) Although not reflected on the administrative forms, Dr. Richman later revealed in discovery that the BGO was Dr. Carr.

On December 10, 2017, Plaintiff filed another grievance ("Grievance 387267"), stating:

> I'm grieving the fact that my health care is being denied because of security excuses. I was approved surgery for ACL reconstruction and now that I've been accused of new charges I'm being denied. I was approved proper knee brace but now that I've been accused of new charges my knee brace has been denied. I'm tired of being denied proper healthcare that was already approved because of manufactured excuses. I'm in pain and fear further damage to my knee. I request that security approve for me to receive proper healthcare.

(*Id.* at 339.) The same day, Grievance 387267 was returned by the IGC, who stated, "This Grievance is being returned as this is a Medical issue and the Offender Currently has a Medical Grievance at Level 3 awaiting disposition." (*Id.* at 336.)

A January 1, 2018 note in Plaintiff's medical file observed "[c]ontinued intermittent knee swelling related to previously diagnosed ACL tear," and indicates that Plaintiff requested an update on physical therapy scheduling. (*Id.* at 41.) On January 12, 2018, Plaintiff had a physical therapy appointment, which advised him that "people can live without ACL functionally i.e. basic movement such as getting up, standing, walking and going up and down the stairs," but that "[p]laying sports and other competitive tasks are not recommended/advisable anymore," educated him on appropriate rehabilitative exercises, and noted "[n]o further skilled PT services recommended at this time." (*Id.*)

5

On May 2, 2018, Dr. Richman, as the Bureau Chief, accepted Dr. Carr's recommendation, noting that he "had nothing further to add," and denied Grievance 383100. (*Id.* at 315, 356.)

On May 20, 2018, Plaintiff filed a non-medical grievance ("Grievance 405790"), stating:

> I'm filing this Grievance because I feel as if I'm being retaliated against by the security decision makers in the administration. I was told by medical personnel my surgery was denied not because of my health but because of security reasons so therefore I'm addressing this matter not through medical but through the administration responsible for security decisions.

(*Id.* at 353.)

On May 30, 2018, Plaintiff was seen in the medical unit complaining of knee pain. He reported that he was unable to do any physical exercise due to pain and his knee occasionally got "stuck if he increase[d the] degree of bending." (*Id.* at 37.) He was not experiencing issues with walking except for "occasional issues with 'catching.'" (*Id.*) The nurse practitioner who saw Plaintiff documented that his "[p]ain is not controlled." (*Id.* at 38.) The nurse practitioner further stated, "Plan: add elevil for pain, email Dr. Moen- plead for client to have surgery, but nothing has changed." (*Id.*)

On June 11, 2018, an Informal Resolution form was completed addressing Grievance 405790, stating, "I showed Inmate Ayers the denial from step 3 of his grievance. He [claims] he was approved for the Surgery before the February 1 incident." (*Id.* at 347.) On June 14, 2018, the Resident Grievance Committee recommend denial of the appeal of Grievance 405790, stating, "Medical Determines course of treatment not Security. If Medical Deems Surgery is appropriate they will order not security." (*Id.* at 349.) The same day, the Warden denied

Plaintiff's appeal of Grievance 405790, stating, "I concur with the Committee. Medical treatment is determined by the contractor, not security." (*Id.* at 351.)

### B. Procedural Background

The Amended Complaint asserts an Eighth Amendment claim against Dr. Richman for deliberate indifference to Plaintiff's serious medical needs based on Dr. Richman's May 2018 final denial of Grievance 383100, which sought approval for Plaintiff's knee surgery. (D.I. 6.) Attached to the Amended Complaint are documents demonstrating Plaintiff's efforts to obtain his medical records. To summarize, in early October 2019, an individual acting on Plaintiff's behalf continued an ongoing effort to facilitate Plaintiff's acquisition of his medical records from his time confined in DDOC facilities. She was advised by a DDOC representative that the records had been provided to the Pennsylvania Department of Correction ("PADOC"), and that Plaintiff should fill out a medical grievance with PADOC requesting them. Plaintiff did so, but he was then advised by PADOC that he would need to contact the facilities where he was imprisoned in Delaware to request his records. (*Id.* at 14–17.) Also attached to the Complaint were three pages of Plaintiff's medical records (*id.* at 18–20) and his relevant grievances and the responses thereto. (*Id.* at 21–29.) None of those documents mentioned Dr. Carr or Dr. Moen.

On September 23, 2021, Dr. Richman filed his Answer to the Amended Complaint. (D.I. 41.) On August 31, 2022, after another defendant's motion for judgment on the pleadings was granted (D.I. 82), the Court issued a Scheduling Order (D.I. 83). On December 7, 2022, Dr. Richman produced 519 pages of documents, including Plaintiff's complete medical records from his time in DDOC facilities, which therein referenced Dr. Moen's role in denying his surgery. (D.I. 91-1–91-3.) In a January 10, 2023 discovery response, Dr. Richman identified Dr. Carr,

7

apparently for the first time in this litigation, as having "served as Defendant Richman's designee on medical grievances outside of Defendant Richman's fields of behavior health and psychology." (D.I. 96 at 3.) In a February 13, 2023 discovery response, Dr. Richman stated that "the BGO in 2017 in relation to Grievance No. 383100 was Dr. Vincent Carr." (D.I. 99 at 3.) On March 30, 2023, Plaintiff was transferred to a different Pennsylvania prison. (D.I. 101.)

On May 10, 2023, Dr. Richman filed his motion for summary judgment and brief in support. (D.I. 102, 103.) In an affidavit submitted in support of his motion, Dr. Richman asserts, "Because I am not a medical doctor or physician, when the subject matter of a grievance was 'medical,' I would routinely rely upon the judgment of the Bureau's Medical Director, who at all times relevant to this matter was Dr. Vincent Carr, M.D." (D.I. 105 at 3.)

Plaintiff opposes Dr. Richman's motion for summary judgment. In addition, on May 19, 2023, Plaintiff filed his motion for leave to amend, seeking to add Dr. Carr and Dr. Moen as defendants. (D.I. 106.) Plaintiff argues that he did not know of Dr. Carr's and Dr. Moen's identities and roles in denying his knee surgery until he learned that information in discovery. He also asserted that because Pennsylvania prisoners' mail is sent to Florida to be screened before it is sent to the prisoners, he did not receive the relevant discovery until 7 to 10 days after it was mailed. He further asserted that when he was transferred to a new Pennsylvania prison on March 30, 2023, it took three weeks for his legal papers to arrive. On June 29, 2023, Plaintiff filed his proposed second amended complaint, which adds Dr. Carr and Dr. Moen as defendants and contains the same allegations against Dr. Richman. In response to Plaintiff's motion to amend, Dr. Richman addressed only the claims against Dr. Carr and himself, and he argued that leave to amend should be denied based on undue delay and futility. (D.I. 117.)

8

### III. SUMMARY JUDGMENT LEGAL STANDARD

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that could affect the outcome" of the proceeding. *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011). "[A] dispute about a material fact is genuine if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Id.* (internal quotation marks omitted).

The moving party bears the burden of demonstrating the absence of any genuine issues of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the burden of persuasion at trial would be on the non-moving party, then the moving party may satisfy its burden of production by pointing to an absence of evidence supporting the non-moving party's case, after which the burden of production shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986); *Williams v. West Chester*, 891 F.2d 458, 460–61 (3d Cir. 1989). A non-moving party asserting that a fact is genuinely disputed must support such an assertion by "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations, . . . admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the moving party] do not establish the absence . . . of a genuine dispute . . . ." Fed. R. Civ. P. 56(c)(1). The non-moving party's evidence "must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance." *Williams*, 891 F.2d at 460–61.

9

The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). "[T]he facts asserted by the nonmoving party, if supported by affidavits or other evidentiary material, must be regarded as true . . . ." *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996). If "there is any evidence in the record from any source from which a reasonable inference in the [nonmoving party's] favor may be drawn, the moving party simply cannot obtain a summary judgment." *Id.* at 1081 (internal quotation marks omitted).

## IV.  DISCUSSION

### A.  Dr. Richman's Motion for Summary Judgment

Dr. Richman argues that summary judgment should be granted in his favor because the evidence does not establish an Eighth Amendment violation, he was not personally involved in decisions regarding Plaintiff's surgery, and he is entitled to qualified immunity.

The Eighth Amendment proscription against cruel and unusual punishment prohibits the imposition of "unnecessary and wanton infliction of pain contrary to contemporary standards of decency." *Pearson v. Prison Health Serv.*, 850 F.3d 526, 534 (3d Cir. 2017) (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). Accordingly, the Supreme Court has held that "prison officials violate the Eighth Amendment when they act deliberately indifferent to a prisoner's serious medical needs by 'intentionally denying or delaying access to medical care or interfering with the treatment once prescribed.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103–05 (1976)). To establish a claim of deliberate indifference under the Eighth Amendment, the prisoner "must make (1) a subjective showing that 'the defendants were deliberately indifferent

10

to [his or her] medical needs' and (2) an objective showing that 'those needs were serious.'" *Id.* (quoting *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999)).

Although a "mere disagreement as to the proper medical treatment" does not "support a claim of an eighth amendment violation," *Monmouth Cnty. Corr. Inst. v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987), the Third Circuit has explained that a prisoner's claim of denial or delay of necessary medical treatment for non-medical reasons should be assessed differently from a claim that merely challenges the adequacy of the care received. *See Pearson*, 850 F.3d at 537. To establish the "deliberate indifference prong" of an adequacy of care claim, the prisoner must prove that the care he received was objectively inadequate and that the defendant acted with the requisite state of mind when providing that inadequate care. *Id.* at 535–36. The Third Circuit has explained, however, that

> [u]nlike the deliberate indifference prong of an adequacy of care claim (which involves both an objective and subjective inquiry), the deliberate indifference prong of a delay or denial of medical treatment claim involves only one subjective inquiry—since there is no presumption that the defendant acted properly, it lacks the objective, propriety of medical treatment, prong of an adequacy of care claim. Absent that objective inquiry, extrinsic proof is not necessary for the jury to find deliberate indifference in a delay or denial of medical treatment claim. All that is needed is for the surrounding circumstances to be sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors.

*Id.* at 537.

Dr. Richman contends that summary judgment should be granted in his favor because the evidence does not establish an Eighth Amendment violation. However, the evidence of record, viewed in the light most favorable to Plaintiff, demonstrates a triable issue of fact as to whether Plaintiff was denied a necessary surgery for non-medical reasons. Accordingly, the Court will not grant summary judgment on that basis.

11

Dr. Richman contends that this is an adequacy of care case, not a delay or denial of treatment case. He argues that, "[b]ecause Plaintiff received ongoing treatment for his knee, he cannot demonstrate that the cancelling of his surgery appointment in favor of less-invasive, alternative treatment rises to the level of a constitutional violation." (D.I. 103 at 12.) And Dr. Richman cites case law for the proposition that, "where evidence shows that the delay of surgery for ACL was based on medical judgment, such delay does not support an Eighth Amendment claim." (*Id.* (citing *Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 661 (7th Cir. 2021).) He further asserts that "Dr. Carr, as the BGO, had reviewed Plaintiff's grievance, [and] agreed with the Medical Provider that surgery was not necessary." (*Id.* at 13.)

The problem with that argument is that the evidence of record, viewed in the light most favorable to Plaintiff, suggests that Plaintiff's ACL surgery was necessary and that it was denied for non-medical reasons. ACL surgery had previously been determined to be appropriate, and it was scheduled, but it was cancelled and never rescheduled after Plaintiff participated in a prison riot. Dr. Richman says he relied on Dr. Carr's medical judgment in denying Plaintiff's request to reschedule the surgery, but Dr. Carr's own written decision (as BGO) denying Grievance 383100 suggested that the surgery was being withheld for a non-medical reason having to do with "security." (D.I. 105 at 306.) In addition, the stated grounds on which Grievance 383100 was denied are in tension with the Resident Grievance Committee's later statements that "Medical Determines course of treatment not Security" and "[i]f Medical Deems Surgery is appropriate they will order not security," as well as the Warden's statement that "Medical treatment is determined by the contractor, not security." (*Id.* at 349, 351.) These circumstances

12

are "sufficient to permit a reasonable jury to find that the delay or denial was motivated by non-medical factors." *See Pearson*, 850 F.3d at 537.

Dr. Richman argues that he is nevertheless entitled to summary judgment because he was not personally involved in decisions regarding Plaintiff's surgery. But the evidence viewed in the light most favorable to Plaintiff suggests that he was: Dr. Richman denied Plaintiff's Grievance 383100, which requested to reschedule the ACL surgery that had been cancelled over a year prior. And while it is true that a prisoner's mere filing of a grievance may not be sufficient to demonstrate personal involvement on the part of a prison official, courts make a distinction between merely participating in "after-the-fact" review of a grievance complaining of conduct that already occurred, which does not amount to personal involvement in the constitutional violation, and "responding to a grievance that complains of events that are ongoing and denying requested relief[,] [which] may constitute the knowledge and acquiescence that is necessary to show personal involvement under Section 1983." *Spada v. Klemm*, No. 22-478, 2023 WL 2290258, at *9 (M.D. Pa. Feb. 28, 2023); *see also Diaz v. Palakovich*, 448 F. App'x 211, 215 (3d Cir. 2011) (concluding that a reasonable factfinder could find that the defendants had knowledge of ongoing wrongful conduct through the prisoner's grievances and acquiesced by failing to address the ongoing wrongful conduct); *Sutton v. Rasheed*, 323 F.3d 236, 249–50 (3d Cir. 2003), as amended (May 29, 2003) (concluding that summary judgment was not warranted as to a defendant who played an active role in the continued denial of prisoner's rights when he received a letter from the prisoner, styled as a final appeal of a grievance, and denied the grievance appeal).

Finally, Dr. Richman's request for summary judgment on the basis of qualified immunity is denied. His argument is essentially that he could not have known that he could be subjected to liability based on his mere denial of a grievance. However, as the case law cited in the previous paragraph indicates, a government official can be held liable if his role in the grievance process caused a continuing denial of a prisoner's constitutional rights.

B.  **Plaintiff's Motion to Amend**

Plaintiff has moved for leave to file a proposed second amended complaint containing the same allegations against Dr. Richman and adding Dr. Carr and Dr. Moen as defendants. Federal Rule of Civil Procedure 15(a) governs amendments to pleadings. Rule 15(a)(2) provides that a court should freely give leave to amend when justice so requires. The decision to grant or deny leave to amend lies within the discretion of the court. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Grounds that could justify a denial of leave to amend include undue delay, bad faith, dilatory motive, prejudice, and futility. *Id.*

Dr. Richman opposes adding Dr. Carr as a defendant on the grounds of undue delay and futility. The Court does not find undue delay, as the record reflects that Plaintiff was unaware of Dr. Moen's and Dr. Carr's involvement until December 2022 and February 2023, respectively, despite Plaintiff's diligent efforts to obtain the relevant documents and information in discovery. Nor can the Court conclude on this record that Plaintiff's claims against Dr. Carr are necessarily futile. Plaintiff's motion for leave to amend will be granted.

14

<023>

## V.  CONCLUSION

For the above reasons, the Court will deny Dr. Richman's motion for summary judgment (D.I. 102) and grant Plaintiff's motion to amend (D.I. 106).

An appropriate Order will be entered.